## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

WENDALL HALL,

      Petitioner,

v.                                            Case No. 3:25-cv-338-LC-MJF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Wendall Hall has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") moves to dismiss the petition with prejudice because Hall's claims are procedurally defaulted. Doc. 14. Hall opposes the motion. Doc. 16. The undersigned concludes that no evidentiary hearing is required, and that Hall's petition should be denied because all of Hall's claims are procedurally defaulted.

### BACKGROUND

In Escambia County Circuit Court Case No. 1994-CF-3077, Hall was convicted of two counts of sexual battery and one count of kidnapping. Doc.14-2. Hall was sentenced on each count to 240 months

of imprisonment followed by 10 years on probation, to run concurrently. *Id.*

While Hall was serving his term of incarceration, he filed so many frivolous filings that both the Escambia County Circuit Court and the Florida First District Court of Appeal ("First DCA") prohibited Hall from filing *pro se* pleadings or papers unless the filing was signed by an attorney licensed to practice law in the State of Florida. The Escambia County Circuit Court entered its order on June 30, 2005, after giving Hall notice and an opportunity to be heard. Doc. 14-12. The circuit court's order reads, in relevant part:

> 2.    The Defendant is hereby **PROHIBITED** from filing any future pleadings unless reviewed and signed by an attorney licensed to practice law in the state of Florida[.]

Doc. 14-12. The First DCA affirmed. *Hall v. State*, No. 1D05-3823, 914 So. 2d 957 (Fla. 1st DCA Nov. 4, 2005) (Table), *petition for review dismissed*, 926 So. 2d 1269 (Fla. Mar. 10, 2006) (Table), *cert. denied*, 127 S. Ct. 104 (2006).

The First DCA issued its ban on *pro se* filings on May 14, 2014, after giving Hall notice and an opportunity to be heard. *Hall v. Norris*, 142 So.

3d 882 (Fla. 1st DCA 2014) (copy at Doc. 14-17). The First DCA's order reads, in relevant part:

> [W]e prohibit Appellant from filing any further *pro se* pleadings in this court. Any pleadings or papers filed in this court regarding Appellant must be reviewed and signed by an attorney licensed to practice in this state. Accordingly, the clerk is directed not to accept any further *pro se* pleadings or filings from Appellant in any matter. *See Perry v. Mascara*, 959 So.2d 771 (Fla. 4th DCA 2007).

*Hall*, 142 So. 3d at 882–83.

Hall completed his prison sentence in late June 2019, and his term of probation was set to begin on July 1, 2019. Doc. 16 at 2; *see also* Doc. 16-2, Ex. F. However, prior to being released from the Florida Department of Corrections, the State filed a petition to civilly commit Hall as a sexually violent predator under the Jimmy Ryce Act, Fla. Stat. §§ 394.910–394.931. Doc. 16 at 2. Thus, when Hall was released from the FDC, he immediately was transferred to the Escambia County Jail pending a trial in the civil commitment case.

On October 18, 2019, Hall was adjudicated a sexually violent predator and committed to the Florida Department of Children and Family Services. Doc. 14-1.

Hall's federal habeas petition involves a state statute that was passed while Hall was in prison. In 2014, the Florida Legislature added this provision to its probation statute, Fla. Stat. § 948.012:

> (6) If a defendant who has been sentenced to a split sentence pursuant to subsection (1) is transferred to the custody of the Department of Children and Families pursuant to part V of chapter 394, the period of probation or community control is tolled until such person is no longer in the custody of the Department of Children and Families. This subsection applies to all sentences of probation or community control which begin on or after October 1, 2014, regardless of the date of the underlying offense.

Fla. Stat. § 948.012(6) (eff. Oct. 1, 2014). Hall alleges that he learned of this provision and its applicability to him in 2022. Doc. 1 at 15 in ECF.

On March 28, 2022, Hall filed in the Florida Supreme Court a "Petition for Declaratory Judgment" seeking a declaration that § 948.012(6) violated the Due Process Clause, the Equal Protection Clause, the Ex Post Facto Clause, and the Double Jeopardy Clause. Doc. 14-3. The Florida Supreme Court treated the filing as a petition for writ of habeas corpus and transferred it to the Escambia County Circuit Court for consideration as a motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a) "or as otherwise considered appropriate by the trial court to address the claims brought." Doc. 14-3 at 1. Recognizing

the circuit court's 2005 ban on Hall filing pleadings *pro se*, the Florida

Supreme Court directed:

> In light of the petitioner's status as being barred from filing pro se pleadings before the transferee court, we direct the transferee court to accept the petition and appoint counsel to assist the petitioner with his claim. The transfer of this case should not be construed as an adjudication or comment on the merits of the petition, nor as a determination that the transferee court has jurisdiction or that the petition should be considered as a motion to correct sentence.

Doc. 14-3.

Hall then filed a *pro se* "Supplemental Motion to Correct Illegal

Sentence" under Rule 3.800(a) in the state circuit court. Doc. 14-4. Hall

asserted that his sentence was illegal because the sentencing court

departed upward from the sentencing guidelines without filing written

reasons for the departure. Doc. 14-4. As relief, Hall requested that his

sentences of probation be vacated.

The circuit court appointed Joseph O. Reosti, Esq. to represent

Hall. Doc. 14-9. The circuit court ordered Reosti to review Hall's "Petition

for Declaratory Judgment" and file one of the following: (1) verification

that counsel adopted Hall's petition and would pursue Hall's claims as

written; (2) a new petition/motion based solely on one or more of the

issues raised in Hall's petition, "if appropriate, legal, and supported by

good faith"; or (3) a statement that counsel would not and could not in good faith pursue any of the issues Hall raised in the "Petition for Declaratory Judgment." *Id*.

Reosti file a response certifying that he could not in good faith pursue any of the issues Hall raised. Doc. 14-10.

On August 22, 2024, the state circuit court ruled:

In his petition, Defendant alleges that on March 20, 1997, he was sentenced to 20 years in prison to be followed by 10 years of probation in case 94-CF-3077. . . . He alleges he completed his prison sentence on June 27, 2019, but was civilly committed in 2019 as a sexually violent predator under the Jimmy Ryce Act, chapter 394, Florida Statutes. He alleges his probation in case 94-CF-3077 has been tolled during his civil commitment. Defendant challenges section 948.012(6) Florid[a] Statutes (2014), which allows his probation to be tolled while he is in custody under chapter 394, Florida Statutes. He seeks declaratory relief, requesting the Court to declare section 948.012(6) unconstitutional.

Declaratory relief is not a proper means of collateral review of Defendant's judgment and sentence and is not properly brought in his criminal case. *See Tedder v. State*, 12 So. 3d 265 (Fla. 5th DCA 2009). Because Defendant is challenging his sentence and imposition of probation, the Court will treat the petition as filed under rule 3.800(a).

Defendant's "Supplemental Motion to Correct Illegal Sentence and Judicial Notice of Fundamental Error to be Reviewed Sua Sponte," which was brought pursuant to rule 3.800(a) and section 90.201, Florida Statutes, was filed in case 94-CF-3077 only. By this pleading, Defendant attempts to supplement his petition with an additional claim, asserting

that Defendant's prison sentence followed by probation exceeds the sentencing guidelines without a written reason. Defendant requests correction of his sentence by vacating the 10 year term of probation. This pleading was not authorized by the Florida Supreme Court's order and is filed in violation of the order of June 30, 2005.

By his response of June 5, 2024, appointed counsel has advised the Court that after a complete review of Defendant's pleading, counsel cannot in good faith pursue any of the grounds argued by Defendant in the petition.FN2 Because Defendant's *pro se* petition has not been adopted by counsel, and his *pro se* supplemental motion is unauthorized, Defendant's claims as to case 94-CF-3077 may be stricken as unauthorized under the order of June 30, 2005.

> FN2 The Court notes counsel refers to three grounds argued by Defendant, while the petition contains four delineated "Issues." However, the Court trusts that counsel made a complete review of the petition, as stated in counsel's response.

Doc. 14-11 at 1–3 (footnote 3 omitted).[1] The state circuit court's decretal stated:

1.    Defendant's "Petition for Declaratory Judgment" is **STRICKEN** as to case 94-CF-3077 and is **DISMISSED** as to case 94-CF-3113.

2.    Defendant's "Supplemental Motion to Correct Illegal Sentence and Judicial Notice of Fundamental Error to be Reviewed Sua Sponte" is **STRICKEN**.

---

[1] In a letter Reosti later wrote to Hall, Reosti confirmed: "I could not, in good faith, pursue any of your arguments, either by adopting them outright, or re-filing them in my own pleading." Doc. 14-18 at 21 in ECF.

3.    Under rule 3.800(a), Defendant has the right to appeal within 30 days of rendition of this order.

4.    The Clerk of the Court is **DIRECTED** to file and maintain the instant *pro se* filings in the court record without further response from the Court as to case 94-CF-3077.

Doc. 14-11 at 3.

On September 4, 2024, Hall moved for appointment of appellate counsel. Doc. 14-13. The circuit court denied the motion on October 4, 2024, noting that there was no right to appellate counsel in a collateral review proceeding. Doc. 14-14.

On November 14, 2024, Hall submitted a *pro se* notice of appeal to the First DCA. Doc. 14-15. On November 15, 2024, the Clerk of the First DCA notified Hall that his pleading was not accepted for filing pursuant to the prior order prohibiting *pro se* filings:

Pursuant to this Court's May 14, 2014, opinion in case 1D2013-3634, I am not permitted to submit to the Court any pro se filings filed by you. Your notice of appeal therefore has been placed in a correspondence file, unfiled and without action. If you want to initiate a case in this Court, the notice of appeal or petition must be filed by a member in good standing of The Florida Bar.

Doc. 14-16. Hall did not file a notice of appeal through an attorney.

Hall then filed a "Petition for Declaratory Judgment and or Petition for Writ of Habeas Corpus" in the Florida Supreme Court asserting that

§ 948.012(6) was unconstitutional as applied to him. Doc. 14-18. Hall argued: "Fl. Stat. 948.012(6) tolling or probation provision is unconstitutional, as applied to petitioner's 1997, 10 year probationary split sentence, as applied to petitioner's 1994 sexual battery criminal charges and or his 1997 convictions and sentence." Doc. 14-18 at 32 in ECF.

On January 14, 2025, the Florida Supreme Court denied the petition "as procedurally barred." Doc. 14-19. The court explained: "A petition for extraordinary relief is not a second appeal and cannot be used to litigate or relitigate issues that were or could have been raised on direct appeal or in prior postconviction proceedings." Doc. 14-19.

Hall filed his *pro se* federal habeas petition on March 13, 2025. Doc. 1. Hall claims that application of the 2014 tolling provision of § 948.012(6) to his 1997 probationary sentence violates the Ex Post Facto Clause (Ground 1); the Equal Protection Clause (Ground 2); and the procedural component of the Due Process Clause (Ground 3). As relief, Hall seeks "to vacate his 10 year probation sentence and or allow his probation sentence to run concurrently with his civil commitment confinement and to give

Petitioner credit for time he's served on probation during his civil commitment confinement." Doc. 1 at 16 in ECF.

The State asserts that Hall's claims are procedurally defaulted because the state courts rejected them on independent and adequate state-law procedural grounds. Doc. 14.

### THE FEDERAL HABEAS EXHAUSTION REQUIREMENT

"To respect our system of dual sovereignty, the availability of habeas relief is narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. 366, 375 (2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 596 U.S. at 375-79.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 596 U.S. at 377 (alteration adopted) (quoting 28 U.S.C. § 2254(b)(1)(A)). State prisoners must "invoke[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "As long as a State appellate process exists, follows 'firmly established and regularly followed' rules, and is not 'ineffective to protect the rights' of the petitioner, the petitioner must navigate the

State appellate process under the State's rules." *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1354 (11th Cir. 2024) (first quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991); and then quoting 28 U.S.C. § 2254(b)(1)(B)(ii)).

"Not adhering to a State's procedural rules to present federal claims deprives the state courts of the opportunity to address those claims." *Carruth*, 93 F.4th at 1354 (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). A procedural default can arise "when the state court correctly applies a procedural default principle of state law and concludes that the petitioner's federal claims are barred." *Carruth*, 93 F.4th at 1354.

When the State asserts a procedural-default defense, the federal court first must determine "whether the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar . . . ." *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Carruth*, 93 F.4th at 1355. Second, the court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Bailey*, 172 F.3d at 1303. If the answer is yes, then procedural

default bars federal habeas review. *Caniff v. Moore*, 269 F.3d 1245, 1247

(11th Cir. 2001).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 596 U.S. at 378–79 (internal quotation marks and citations

omitted; alteration adopted).

A petitioner seeking to overcome a procedural default must

"demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider

the claim[ ] will result in a fundamental miscarriage of justice." *Coleman*,

501 U.S. at 750; *Carruth*, 93 F.4th at 1355.

A petitioner establishes "cause" by showing that an *objective factor*

*external to the defense* impeded an effort to properly raise the claim in the

state court. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)

(emphasis added). A petitioner establishes "prejudice" by showing at

least a reasonable probability that the proceeding's result would have been different. *Id.* at 892.

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that that was not presented at trial.

*Schlup*, 513 U.S. at 327.

## DISCUSSION

### A.    <u>The Parties' Exhaustion Arguments</u>

The State asserts that Hall's claims are procedurally defaulted because the state circuit court and the First DCA rejected Hall's claims on an independent and adequate state-law procedural ground, namely,

"the fact that Hall had relinquished his right to file pro se pleadings by abusing the process and being limited to litigation run by an attorney." Doc. 14 at 12. In addition, the Florida Supreme Court dismissed the claims in Hall's subsequent habeas petition because they were procedurally barred. *Id.* at 6.

Hall asserts that he satisfied the exhaustion requirement because he gave the state courts an opportunity to address his constitutional claims but the courts improperly refused to consider them. Doc. 1 at 3–4; Doc. 16 at 3, 6, 13. Hall argues that the state circuit court's imposition of a procedural bar was inadequate to support its striking of Hall's petition/Rule 3.800 motion, because the Florida Supreme Court required the circuit court to accept the pleading and consider Hall's claims on the merits. Doc. 16 at 3–5, 7–9, 12–13.

In addition, Hall asserts that the First DCA's imposition of a procedural bar was inadequate, and that "state appeal court remedies were **unavailable** to Hall or **were ineffective** to protect Hall's constitutional rights, since the **FIRST DISTRICT COURT OF APPEAL (1st DCA)** would not accept Hall's pro se appeal." *Id.* at 5, 6–13.

The undersigned will address Hall's "unavailable" and "ineffective" argument first.

## B. The State Courts' Prohibition on *Pro Se* Filings Did Not Render the State Corrective Process Unavailable or Ineffective to Protect Hall's Rights

Hall argues that state corrective process was unavailable to him or was ineffective to protect his constitutional rights because of the state circuit court's and the First DCA's bans on Hall filing documents *pro se*. Doc. 16 at 5–7, 12.

A state prisoner may avoid the exhaustion requirement if "there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i)–(ii). "An exception is made only if there is no *opportunity* to obtain redress in state court or if the *corrective process* is so clearly deficient as to render futile *any effort* to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (emphasis added).

Hall does not contend that Florida's postconviction procedures are inadequate or ineffective to address a defendant's constitutional challenges to the application of § 948.012(6). Hall, in fact, concedes that

a state corrective procedure existed for review of constitutional claims like his. Doc. 16.

Instead, Hall argues that the state courts' prohibition of Hall filing *pro se* pleadings brings him under § 2254(b)(1)(B)'s exception. Hall, however, has not shown that the *pro se* filing bans rendered the state corrective process unavailable or ineffective to protect his rights.

For starters, the ban on *pro se* filings was a circumstance created by Hall's own abuse of the judicial process. *See Claudio v. Sec'y, DOC*, 2015 WL 5996932, at *6 (M.D. Fla. Oct. 14, 2015) (petitioner's abusive tactics in the state-court system, and the state courts' ban on *pro se* filings, did not "negate or excuse the requirement that he exhaust his state court remedies prior to filing a federal petition").

Second, the ban did not prevent Hall from pursuing Florida's corrective process at all, it only prevented him from doing so as a *pro se* litigant. Hall still had the opportunity to fully exhaust his claims by filing documents through a lawyer in good standing with The Florida Bar. *See Maggard v. State*, 790 So. 2d 506, 508 (Fla. 5th DCA 2001) (a *Spencer* order does not completely bar a defendant from the court that imposed it;

rather, "[s]uch defendants simply need to have a valid legal claim, as recognized by a responsible, licensed Florida attorney").

The state circuit court even appointed counsel to review Hall's pleading. On appeal, the First DCA explicitly informed Hall that the appellate process still was available to him: "If you want to initiate a case in this Court, the notice of appeal or petition must be filed by a member in good standing of The Florida Bar." Doc. 14-16.

In short, Hall's abusive tactics in the state-court system—and the state courts' ultimate decision to reject further *pro se* filings from Hall—does not bring Hall under § 2254(b)(1)(B)'s exception to the exhaustion requirement. Hall was required to properly exhaust his federal claims in the state courts.

## C.    Hall's Claims Are Procedurally Defaulted

Each state court clearly and expressly stated that its judgment rested on a state-law procedural bar. The procedural bars were wholly independent of Hall's federal constitutional challenges to the probation statute.

Thus, the only question is whether the state courts' procedural bars were an "adequate" state ground for concluding that Hall's federal claims

were barred. *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state procedural rule constitutes an adequate state ground when it is "firmly established and regularly followed" and not "applied in an arbitrary or unprecedented fashion." *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006); *Judd*, 250 F.3d at 1313.

### 1.    *The State Circuit Court's Imposition of a Procedural Bar Was Adequate to Support Its Judgment*

Hall argues that the state circuit court's application of the *pro se* filing ban to arrive at the conclusion that Hall's federal claims were barred was improper because the Florida Supreme Court ordered the circuit court to accept Hall's *pro se* petition/motion. Doc. 16 at 4–5. This argument is a non-starter. The record establishes that the state circuit court fully complied with the Florida Supreme Court's order.

The circuit court accepted Hall's pleading for filing and appointed counsel to review the validity of Hall's proposed claims. Doc. 14-9. After counsel certified that he could not in good faith pursue any of the claims Hall raised, the circuit court concluded that Hall's *claims* were procedurally barred by the *pro se* ban and struck Hall's *claims*, but allowed Hall's *pro se* petition/motion to remain part of the state-court record. Doc. 14-10; Doc. 14-11.

The Florida Supreme Court did not require the circuit court to address Hall's claims on the merits. The Florida Supreme Court explicitly stated: "The transferee court should not interpret the transfer of this case as an indication that it must or should reach the merits of the petition." Doc. 14-3.

The procedural bar imposed by the circuit court was adequate to support its judgment. Prohibitions on abusive litigants' *pro se* filings are a firmly established and regularly followed procedural practice in the Florida state courts. *See State v. Spencer*, 751 So. 2d 47, 48 (Fla. 1999) (a court may prohibit an abusive litigant from filing further *pro se* challenges to his conviction and sentence as long as the litigant is provided notice and an opportunity to be heard); *Hastings v. State*, 79 So. 3d 739, 742 (Fla. 2011) (imposing ban on *pro se* filings); *Johnson v. Rundle*, 59 So. 3d 1080, 1081 (Fla. 2011) (same); *Campbell v. State*, 296 So. 3d 893, 894 (Fla. 2020) (same); *Butler v. State*, 55 So. 3d 598, 599–600 (Fla. 1st DCA 2010) (affirming trial court's decision to strike motion to correct illegal sentence in accordance with previous order barring further *pro se* filings); *Mobley v. State*, 976 So. 2d 1146, 1147 (Fla. 5th DCA 2008) (same); *see also Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016).

The state circuit court's rejection of Hall's claims on an independent and adequate state procedural ground renders Hall's claims procedurally defaulted from habeas review. *Bailey*, 172 F.3d at 1302 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

### 2. *The First DCA's Imposition of a Procedural Bar Was Adequate to Support Its Judgment*

Even if the District Court were to conclude that the state circuit court's imposition of a procedural bar was inadequate to support its judgment, Hall still faces another obstacle. Hall failed to invoke one complete round of the state's appellate review process, because his *pro se* appeal was rejected on state-law procedural grounds, and Hall did not cure the deficiency. *See Boerckel*, 526 U.S. at 845.

Florida's established postconviction process required Hall to appeal the circuit court's order. Fla. R. App. P. 9.030(b)(1)(A); Fla. R. App. P. 9.110(a)–(b); Fla. R. App. P. 9.141(b); *see also* Doc. 14-11 at 3 (notifying Hall of his right to appeal). Hall's *pro se* appeal was rejected by the First DCA on the state-law procedural ground that Hall was prohibited from filing pleadings *pro se* and failed to have an attorney file the notice of appeal. Doc. 14-16.

As discussed above, a ban on an abusive litigant's *pro se* filings is firmly established and regularly followed procedural practice in the Florida state courts. *See* discussion *supra* Section C.1.

Hall was notified that his *pro se* notice of appeal had been rejected and that he had to file a notice of appeal through counsel. Doc. 14-16. Hall, however, failed to file a notice of appeal through an attorney. Thus, Hall's claims are procedurally defaulted. *See, e.g., Hinson v. Sec'y, Dep't of Corr.*, 2018 WL 5794171, at *4–5 (N.D. Fla. Oct. 17, 2018).

### 3.    *The Florida Supreme Court's Imposition of a Procedural Bar Was Adequate to Support Its Judgment*

Hall's subsequent attempt at exhaustion also failed. On January 14, 2025, the Florida Supreme Court denied Hall's second state habeas petition "as procedurally barred" because Hall was attempting "to litigate or relitigate issues that were or could have been raised . . . in prior postconviction proceedings." Doc. 14-19. In other words, Hall's as-applied challenge to the constitutionality of § 748.012(6) was or could have been raised in his first petition that was transferred to the state circuit court.

The procedural bar imposed by the Florida Supreme Court is firmly established and regularly followed in the Florida state courts. *Hildwin v. Dugger*, 654 So.2d 107, 111 (Fla. 1995); *Johnston v. State*, 63 So. 3d 730,

747 (Fla. 2011); *Zuluaga v. State, Dep't of Corr.*, 32 So. 3d 674, 676–77 (Fla. 1st DCA 2010).

In short, the Florida Supreme Court's conclusion that Hall's federal claims were barred rested on an adequate state-law procedural bar. Thus, Hall's federal claims are procedurally defaulted.

## D.    **Hall Fails to Overcome His Procedural Default**

Hall fails to establish "cause" to overcome his procedural default. Hall first argues that the state courts' barring him from filing *pro se* pleadings constitutes "cause" to overcome his procedural default. Doc. 16. This argument fails, because the reason Hall was barred from filing *pro se* pleadings is due to his own conduct, namely, repeatedly filing frivolous pleadings and abusing the judicial process. *See Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004).

Hall also argues that his procedural default is excused because appointed postconviction counsel was ineffective for failing to pursue Hall's claims. Doc. 16 at 9–12 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).

Hall, however, had no *constitutional* right to postconviction counsel to litigate his challenges to the probation statute. *See Coleman*, 501 U.S. at 753–55. Also, the *Martinez* exception does not apply, because Hall's

procedurally defaulted claims are not ineffective-assistance-of-trial-counsel claims. *See Martinez*, 566 U.S. at 17; *Rigg v. Blackwater River Corr. Facility*, 685 F. App'x 812, 816 (11th Cir. 2017); *Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013).

Because Hall fails to establish "cause" to excuse his procedural default, and Hall has not presented evidence of his factual innocence of his crimes to satisfy the miscarriage of justice exception, his petition must be denied.

## A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. See 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a

constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 580 U.S. 100, 115 (2017). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

"Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

CONCLUSION

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that the District Court:

1.    **GRANT** Respondent's motion to dismiss, Doc. 14.

2.    **DENY** Hall's petition for writ of habeas corpus, Doc. 1.

3.    **DENY** a certificate of appealability.

4.    **DIRECT** the clerk of court to close this case file.

At Panama City, Florida, this <u>21st</u> day of November, 2025.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to a magistrate judge to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**